John S. Ebaugh *v.* The German Reformed Church in the City of New York, otherwise known as The Free and Independent German Reformed Church in the City of New York.

A contract with the trustees *de facto* of a religious corporation—in the actual possession of the church—edifice, books, records, seal, and all the temporalities of the church, made by a person without knowledge of an illegality in their election, is binding upon the corporation, and will be enforced, although afterwards such election is adjudged to have been illegal.

Otherwise, if, when the contract is entered into, the illegality shall have been already judicially determined.

Where the contract is made after the decision of a court of competent jurisdiction that the trustees are legally in office, which decision is afterwards reversed by an appellate tribunal; the presumption is, that the contracting parties acted, intermediate the decision and the reversal, without knowledge of the illegality, and under the belief that the proceedings were legal. And the contract is valid against the corporation, in favor of the party contracted with, although the latter, having been unofficially associated with the trustees before the contract, thereupon becomes, and continues until the reversal, a member of their board.

The provision in the act for the incorporation of religious societies, that the salary of a minister shall be paid out of the revenues of the church, is directory as to the manner of payment, and should be complied with; but if the trustees neglect such application of the revenues, the minister may recover his salary by action against the corporation.

THIS suit was brought by a clergyman against a religious corporation. The complaint alleged the call and employment of the plaintiff in June, 1844, at a fixed salary, and the rendition of his services in pursuance thereof, until January 1, 1846. It was also averred, that the defendants executed, on account of their indebtedness to him, three bonds, two in June, 1845, and one in January, 1846.

The church was divided into two parties, one represented by Henry Gable and others, Calvinists; the other, by Jacob F. Miller and others, Lutherans. A litigation arose to determine the respective claims of two rival boards of trustees, and was commenced by filing a bill in the old Court of Chancery against trustees elected by the Lutheran party, and who, at the time that suit was commenced, were in possession. Vice Chancellor HOFFMAN dismissed the complaint. His decision was reversed by Chancellor WALWORTH, in May, 1844, and the Gable party were thereupon put in possession, and continued, until after January 1, 1846, in the custody of the temporalities and estate of the church. The employment of the plaintiff was by a board of trustees elected by that party. In January, 1846, the chancellor's decree was reversed by the Court of Errors, and a final judgment was rendered in favor of the Lutheran, or Miller party, in accordance with the original decision of the vice-chancellor. (See 10 Paige Ch. Rep. 627; and 2 Denio, 492.)

It appeared, from the evidence in the present case, that the plaintiff had been associated with the Calvinistic or Gable party; that he was active in aiding the litigation on their behalf; and that after the contract for his services, in June, 1844, he was ex officio one of the consistory, composed of the minister, elders, and deacons, and having in charge the government of the church, and was, as one witness testified, chairman of the board of trustees.

When the contract was made, the Miller party had not obtained a stay of proceedings, nor given notice of any intention to appeal from the chancellor's decision.

Among other objections to the plaintiff's recovery here, the defendants insisted, in substance, that the statutory provision (2 R. S. 4th ed. p. 1183, § 8), requiring payment of the salary out of the revenues of the church, limited his remedy, and allowed to him no resort to the property of the corporation by an ordinary judgment.

The cause was tried by the late Chief Justice SAMUEL JONES, sole referee, who reported that the plaintiff had performed his agreement to act as minister; that the defendants were liable upon their contract of employment, and upon the two bonds of June, 1845, but not upon the bond executed subsequently to the promulgation of the decision of the court of last resort, in January, 1846.

Judgment was entered upon the report for $2,272 37. The defendants appealed.

*James N. Platt,* for the defendants, cited 4 Dess. (S. C.) Chan. Rep. 578; *Perkins* v. *Savage,* 13 Wend. 412; *Green* v. *Burk,* 23 Wend. 490; 2 Kent Com. 295; *Matter of the Mohawk and Hudson R. R. Co.* 19 Wend. 145; *Bank of U. S.* v. *Danbridge,* 12 Wheaton, 69; *Robertson* v. *Bullions,* 9 Barbour S. C. R. 64; *Milhan* v. *Sharp,* N. Y. Supreme Court, decided by Justice Harris; *Sheldon* v. *The Cong. Parish in Easton,* 24 Pick. 286; *Angell* and *James* on Corp. § 253, 303; *Lawyer* v. *Cipperly,* 7 Paige, 281; *Trustees of Vernon* v. *Hill,* 6 Cow. 26; *Hayden* v. *Middlesex Turnpike Co.* 10 Mass. 397; *Burdick* v. *Champl. Glass Co.* 8 Vermont, 19; *McCullough* v. *Moss,* 5 Denio, 567, and other cases.

*Thomas Darlington* and *Edgar S. Van Winkle,* for the plaintiff, cited, among other cases, *Lovett* v. *The Ger. Ref. Church,* 12 Barb. S. C. R. 67; *All Saints' Church* v. *Lovell,* 1 Hall, 191; *People* v. *Collins,* 7 John. Rep. 551; *McInstry* v. *Tanner,* 9 John. R. 135; *Parker* v. *Baker,* 8 Paige Rep. 428;

*Fowler* v. *Beebe et al.* 9 Mass. R. 231 ; *Greene* v. *Cady*, 9 Wend. 415 ; *Dr. Drury's Case*, 8 Coke R. 142 ; *Woodcock* v. *Bennet*, 1 Cowen, 711 ; *Wood* v. *Jackson*, 8 Wend. 836 ; *Allen* v. *Dundas*, 3 Durnf. and E. R. 129.

Ingraham, First J.—The plaintiff claimed to recover from the defendants his salary as pastor of the church up to Dec. 31st, 1845, and three bonds executed by the defendant to him at different dates.   The defendant denied the employment of the plaintiff and the execution of the bonds.

The case was referred by consent to the late Judge Jones, who reported in favor of the plaintiff for his salary and for two of the bonds of $200 each.   From this report the defendant appeals.

It appears from the testimony that before the call of the plaintiff as the pastor of the church, on the 6th of June, 1844, the rights of two bodies claiming to be the lawful board of trustees had become a subject of litigation, and that on the 12th May, 1844, the chancellor reversed a decree of the assistant vice chancellor, of the 10th circuit, and decreed that the board of trustees who subsequently called the plaintiff was the true and legitimate board of trustees of the corporation.

After this decision the other party surrendered the seal and temporalities and suffered the board of trustees to take full possession of the church.   It was after this that the plaintiff received and accepted the call to be the pastor of the church, and he so continued to act under that call until the reversal of the chancellor's decree at the close of 1845. At the time of employing the plaintiff and for some time afterwards, no appeal had been taken from the chancellor's decision.

The defendant objects to the plaintiff's recovery, on the ground that he was a member of the board of trustees, and had full knowledge of all the facts, and therefore was not to be treated as an innocent person dealing with officers *de facto*.

Conceding the rule of law to be as laid down by the defendant's counsel, that knowledge of the illegality of the election of the trustees would deprive the plaintiff of his right to recover,

still the facts do not warrant the application of that rule to the present case. There was at the time no known illegality in their election or their acts. On the contrary, the chancellor of the state had decided that the board were legally in office, and to that decision their opponents had submitted by surrendering to them the seal, books, and temporalities of the church, and had given no notice of any intent at that time to continue the litigation. There was then no knowledge of illegality to render the acts of the parties invalid; on the contrary, the trustees had every reason to suppose themselves legally in office, and not only authorized but under obligations to provide a pastor for the church in the discharge of the duties which devolved upon them under the decision of the Court of Chancery.

The only case to which we are referred from which a contrary rule is supposed to be established is in 4 Dess. (S. C.) Cha. Rep. p. 578, but in that case the opposite doctrine is clearly established, viz. that so long as the parties supposed themselves to be legally in office their contract in providing a minister was valid, but after the decision of the court as to the illegality of their election was known to them, that contract became of no effect.

It must also be remembered that there is nothing in the case to show the plaintiff to have been president of the board of trustees or of the consistory before his call as pastor of the church, which was after the chancellor's decision. He was not at that time a party to former proceedings, and from the time of his call down to the time when he ceased to act there, he was acting under the decision of the Court of Chancery, which affirmed the legality of the trustees by whom he was employed. In fact he was not, as I understand the case, at any time the president of the board of trustees, having charge of the temporalities of the corporation, but only of the consistory of the church, where duty was of a religious and not of a temporal or financial character. I cannot therefore find in the case any thing which will justify the imputation, to the parties making this contract and especially to the plaintiff, of any knowledge of the illegality by which the trustees held their places, so as

to authorize the application of the rule as urged by the defendant's counsel.

The second point of the defendant is, that the plaintiff and the board of trustees acting as such, were bound to carry out the trust, and that their acts in open violation of the trust cannot be sustained. The proposition thus stated as matter of law no one would attempt to deny, but as matter of fact, the referee has found that it has no application to this case. How far the preaching of Calvinistic doctrines could be a known violation of a trust, during a period of time that the decision of a Court of Chancery was in force, establishing for the time being that the proper execution of the trust required these doctrines to be preached, may well be doubted; but whether so or not, the question was one of fact upon which the referee's finding cannot be disturbed by us.

It is also contended that the salary should be fixed by the congregation and not the board of trustees, and therefore the plaintiff could only recover on a *quantum meruit*. It appears, however, that notice of making the call was published from the pulpit, and a meeting of the congregation for that purpose called, that such meeting of the congregation took place, the call was there approved and confirmed by the trustees the same day, and that this call so approved by the congregation and the board of trustees contained the amount of salary to be paid to the plaintiff. Upon this evidence the finding of the referee cannot be disturbed.

Nor is the objection that the salary is to be paid out of the revenues of the church any ground for vacating this report. That provision in the statute is directory and should be complied with, but a neglect so to obey it, does not vitiate a contract otherwise valid. The liability of the corporation to their creditor still remained, and the plaintiff had a right to compel on his part a performance of the contract, even if the defendants neglected the duty which the law imposed upon them as to the application of their funds in the payment of such claims.

I have not referred at length to the evidence in this case,

because the opinion of the referee so fully notices all the matters which were raised before him, as well as before the court, upon the facts and evidence in the case, and which are sufficient to sustain in all respects his finding upon the facts. It is to be regretted that such controversies should have arisen, and should have led to such extended litigations, which invariably consume the funds and property of a religious corporation without producing any benefit in return ; but while we regret that such a state of things exists, we can do nothing in the disposition of the case but apply to the contracts between the parties the rules of law applicable to them, however hard the result may be to the defendants. The evidence is sufficient to sustain the finding of the referee upon the facts, and when that is so, the court cannot interfere with it, and there is no rule of law applicable to these facts which in our judgment has been violated. The bonds executed before the decision of the Court of Appeals, were valid bonds, and were to be governed by the same rules as were applicable to the contract for the salary. The bond executed afterwards was properly rejected by the referee, and the rule as urged by the defendant's counsel from 4 Dess. was applied to it. His report therefore for the balance of salary down to the time of the reversal of the chancellor's decision and for the bonds executed prior thereto must be sustained.

Judgment affirmed.